## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

NATIONAL FIRE INSURANCE COMPANY OF
HARTFORD as subrogee of GARDNER WHITE
COMPANY, INC.,

                Plaintiff,                        Case No. 04-CV-71142-DT

v.

ROOFMASTER CONSTRUCTION, INC.,

                Defendant.

_____/

### OPINION AND ORDER GRANTING DEFENDANT'S
### "MOTION FOR SUMMARY JUDGMENT"

       This matter is currently before the court on Defendant's February 17, 2005

"Motion for Summary Judgment."  Defendant's motion has been fully briefed.  On April

27, 2005, the court held a hearing on the motion and, for the reasons set forth below,

will grant Defendant's motion.

### I.  BACKGROUND

       This case involves subrogation claims made by Plaintiff National Fire Insurance

Company of Hartford ("National Fire"), a casualty insurer, against Defendant

Roofmaster Construction, Inc., ("Roofmaster") a roofing contractor.  Subject matter

jurisdiction in this court is predicated on diversity jurisdiction under 28 U.S.C. § 1332.

       Plaintiff's claims arise out of damages to the roof of one of its furniture

warehouses and to contents housed within that structure.  Plaintiff is the subrogee of

Gardner White Company, Inc., a Michigan corporation owning a furniture warehouse

("the warehouse") located at 210001 Groesbeck Highway in Warren, Michigan.

Plaintiff's insured hired Defendant Roofmaster to repair portions of the roof on the warehouse.  (*See* Pl.'s Resp. at ¶ 9.)  Mr. Steve Tronstein, an executive at Gardner White and an attorney, along with his father-in-law Irwin Kahn negotiated several contracts for the repair work on the warehouse's leaking roof with Roofmaster on behalf of Gardner White.  (Blunden Aff. at ¶¶ 2-5; Pl.'s Resp. at ¶ 9.)  Mr. Tronstein signed and executed the two-page contracts for Gardner White.  (Pl.'s Resp. at ¶ 10; *See also* Def.'s Mot. Br., Ex. 3 (signed contracts).)  The parties do not dispute the existence of the roofing contracts at issue; they dispute their terms.  (Def.'s Mot. Br., Ex. 3.)

The four contracts at issue were executed on December 12, 2003.  Each contract consists of a front and back page.  The front page is titled "Proposal" and describes the specific roofing work to be completed by Roofmaster, lists the price, and contains the signatures of the party representatives.  Each front page also states: "All material is guaranteed to be as specified, and the above work to be performed in accordance with the specifications submitted about and will be completed in a substantial workmanlike manner for the sum of . . . ."  (*See id.*)  Mr. Tronstein's signatures appear beneath the following language,

> ACCEPTANCE OF PROPOSAL
> The above prices, specifications, and conditions are satisfactory and are hereby accepted.  You are authorized to do the work specified and payments will be made as specified above.

(*Id.*)

The back page of the contracts contain "General Terms and Conditions."  The relevant terms and conditions provide:

> ACCEPTANCE OF THIS PROPOSAL: Upon acceptance, this proposal shall become binding upon both the Buyer and Roofmaster Construction, Inc. {hereinafter-called Company} and shall be construed according to the

2

laws of the State of Michigan.

LIABILITY: The Company shall not be responsible for damages or delay, either before commencement of or during the said work described herein on account of transportation difficulties, priorities, strikes, accidents, war, acts of God, fire[,] sudden rains, storms, windstorms, other casualty or theft or other cause beyond its control.  The Company will exercise reasonable care when performing the work, but cannot be held responsible in any other manner for damages to sidewalks, driveways, foliage, septic tanks, shrubbery, screens, pipes, or cable above or below ground.  *We will not be held responsible for water damage to the interior of the premises.*  Customer is urged to cover furniture and otherwise protect their property.  We cannot accept responsibility for any damages done to the roof by plumbers, electricians, air conditioner men, fumigators, or any other tradesmen.

We reserve the right to correct any and all problems from or arising out of the performance of this contract where we are found responsible and do not authorize personnel other than that of the Company to perform these services.

. . .

GUARANTEE: There shall be no guarantees, nor liabilities on the Company after the work is completed, except as may be provided in this proposal by a reference to specifications covering the proposed work, or as may be provided specifically in this proposal.  However, any such reference and/or provisions shall be strictly construed only as an obligation on the Company to issue a written guarantee upon completion of the work.  And it is mutually agreed that all guarantees to be binding upon the Company must be in writing whether issued voluntarily or in accordance with this proposal, and that whenever the Company upon completion of the work as provided, shall issue to the Buyer such a written guarantee, the liability of the Company shall be limited to the terms of such guarantee and confined to the work actually done hereunder, in no event shall such a guarantee impose upon the Company and liability for ... damage to the building upon or in which such work is done; ... nor for failure of any materials or integral part of said building used as a base, attachment to, or for said work; nor for damage to interior furniture and fixtures, decorations, stock or equipment due to leakage or otherwise.  It is further agreed that in the event the Buyer, upon final settlement to the Company fails or neglects to require such a guarantee as may be

3

anticipated by the parties hereof, the same shall be construed as a waiver
by the Buyer of all rights under the predicated guarantee.

(*Id.*)

Mr. Tronstein testified that he did not see the backs of the contracts before he

signed them and that if he had read the language on the reverse side, he would not

have signed them.  (Tronstein Dep. at 37, 76 & 81.)  He also stated that Roofmaster

should have informed him to read both sides, but does not claim that these terms and

conditions were added after he signed the contracts.  (*Id.* at 38 & 81-82; *see also* Pl.'s

Resp. at ¶ 14.)

After Roofmaster began repairs, the roof began to leak causing damage to both

the roof, the warehouse, and its contents.  Plaintiff denies that Roofmaster warned Mr.

Tronstein that leakage would occur during the work or that Gardner White should take

proper measures to cover its inventory to prevent damage.  Plaintiff alleges that the

damages resulted from Roofmaster's substandard work and that Gardner White

"eventually terminated Defendant from the job before completion."  (Pl.'s Resp. Br. at 1.)

Plaintiff, as subrogee, filed a three-count complaint against Defendant on March 26,

2004.  Plaintiff's complaint includes causes of action based on negligence, breach of

contract, and breach of express and implied warranties.

## II.  STANDARD

Rule 56 of the Federal Rules of Civil Procedure, which governs summary

judgment motions, provides in part that:

> [t]he judgment sought shall be rendered forthwith if the pleadings,
> depositions, answers to interrogatories, and admissions on file, together
> with the affidavits, if any, show that there is no genuine issue as to any
> material fact and that the moving party is entitled to judgment as a matter
> of law.

4

Fed. R. Civ. P. 56(c). The moving party has the burden of demonstrating that there is no genuine issue as to any material fact, and summary judgment is to be entered if the evidence is such that a reasonable jury could find only for the moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Mt. Lebanon Per. Care Home, Inc. v. Hoover Univ., Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). It is not necessary for the moving party to support its motion with affidavits or other similar forms of evidence; rather, the movant need only show that "there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

The moving party may meet his initial burden by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his case. *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996). If the moving party meets this initial burden, the non-moving party must then present admissible evidence establishing a genuine material issue of fact. *Id.* The non-moving party cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative [admissible] evidence in order to defeat a properly supported motion for summary judgment." *Id.* The party who bears the burden of proof must present evidence establishing a jury question as to each element of his claim. *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000). Failure to present sufficient evidence on an essential element of a claim renders all other facts immaterial for purposes of summary judgment. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir. 1991). Although the non-moving party is entitled to a review of the evidence in the light most favorable to him, he is required to

5

do more than simply show that there is some "metaphysical doubt as to the material facts." *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir. 1994) (quoting *Matsushita Elec. Ind. Co.*, 475 U.S. at 586)).

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 250. Therefore, the court must necessarily examine the evidence provided in a light that is most favorable to the non-moving party, *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962), and decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law," *Anderson*, 477 U.S. at 251-252.

### III. DISCUSSION

Defendant argues that it is entitled to summary judgment because the contracts all contained an unambiguous release of (or limitation on) liability for water damage to the interior of the building, there were no express or implied warranties under the terms of the parties' agreements, that any warranties that may have arisen were waived by Plaintiff's failure to request a written guarantee upon completion of the roofing work, and that Plaintiff waived its claims for damage to the roof itself by denying Defendant its contractual right to fix the roof.

On the other hand, Plaintiff argues that whether the "General Terms and Conditions" on the reverse side of the contracts were part of the parties' contracts is a question of fact for the jury, that each contract contains express and implied warranties not disclaimed by the language found on the reverse side of the contracts, that Plaintiff never released its claims because Defendant did not contract against his own

negligence and the language releasing claims was not conspicuous, that the warranties could not have been waived because Defendant never completed the work (a condition precedent to requesting a guarantee), and finally that the contract language limiting Defendant's damages does not apply to damage caused by Roofmaster to the roof itself.

**A.  Whether the "General Terms and Conditions" Are Part of the Agreements**

Plaintiff claims that whether the "General Terms and Conditions" on the reverse side of the sided proposals are part of the contracts is a triable issue of fact.  The court does not agree.  Plaintiff's agent Mr. Tronstein admits that he signed the contracts.  It is undisputed that these documents contained a front and back side.  Tronstein testified that he did not see the reverse side or read the specific terms contained therein, that Defendant failed to instruct him to read the terms on the back, and that he would not have signed the contracts had he read the terms.  His failure to read both sides of the contract does not, however, permit him to avoid the terms of a written contract he signed.

Under Michigan law, a party who signs a contract cannot seek to invalidate or avoid enforcement of that contract on the basis that he or she did not read or understand its terms absent a showing of fraud or mutual mistake.  *Farm Bureau Mut. Ins. Co. v. Nikkel*, 596 N.W.2d 915 (Mich. 1999); *Moffit v. Sederlund*, 378 N.W.2d 491 (Mich. Ct. App. 1985); *Dombrowski v. City of Omer*, 502 N.W.2d 707 (Mich. Ct. App. 1993) (citing *Paterek v. 6600 Ltd.*, 465 N.W.2d 342, 345 (Mich. Ct. App. 1990)).

As this Michigan Supreme Court has previously explained:

The stability of written instruments demands that a person who executes one shall know its contents or be chargeable with such knowledge.  If he

7

cannot read, he should have a reliable person read it to him.  His failure to do so is negligence which estops him from voiding the instrument on the ground that he was ignorant of its contents, in the absence of circumstances fairly excusing his failure to inform himself.

*Sponseller v. Kimball,* 246 Mich. 255, 260, 224 N.W. 359, 360 (1929); *see also Scholz*

*v. Montgomery Ward & Co., Inc.*, 468 N.W.2d 845, 848-49 (Mich. 1991).

Plaintiff cannot invoke Tronstein's simple failure to read the two-page documents to avoid the terms and conditions contained in the written agreements.  Plaintiff presents no evidence of fraud or mutual mistake, nor is there any suggestion that the reverse side terms were added after Tronstein executed the agreements.  The terms of the parties' agreement include those recorded on both sides of the contract documents. (*See* Def.'s Mot. Br. Ex. 3.)

### B.  The Contractual Limitation on Damages

The primary goal in interpreting contracts under Michigan law "is to determine and enforce the parties' intent."  *Old Kent Bank v. Sobczak*, 620 N.W.2d 663, 666-67 (Mich. Ct. App. 2000).  "To do so, [a court] reads the agreement as a whole and attempts to apply the plain language of the contract itself."  *Id.*  "Where a contract is not ambiguous, courts 'are obligated to accept as the agreement of the parties the plain meaning of the words used.'" *Tel-Tone Properties Group v. Toys "R" Us-Delaware Inc.*, No. 02-1251, 2005  WL 180985, at *4 (Jan. 26, 2005) (quoting *Continental Cas. Co.*, 349 N.W.2d 127, 138 (Mich. 1984)); *see also Stine v. Continental Casualty Co.,* 349 N.W.2d 127, 138 (Mich. 1984).  Courts cannot create ambiguity where none exists. *Auto-Owners Insurance Co. v. Churchman,* 489 N.W.2d 431, 434 (Mich. 1992).

Interpretation of unambiguous contractual language and whether the language is ambiguous in the first instance are both questions of law for the court.  *Nilac Int'l*

8

*Marketing Group v. Ameritech Servs.,* Inc., 362 F.3d 354, 358 (6th Cir. 2004); *Wilkie v. Auto Owners Ins., Co.*, 664 N.W.2d 776, 780 (Mich. 2003).  However, when the language of a contract is unclear or susceptible to multiple meanings, interpretation becomes a question for the trier of fact.  *Nilac*, 362 F.3d at 358; *Klapp v. United Ins. Group Agency, Inc.*, 663 N.W.2d 447, 454 (Mich. 2003);  *D'Avanso v. Wise & Marsac*, 565 N.W.2d 915, 917 (Mich. Ct. App. 1997).

Michigan law permits parties to contract against liability caused by ordinary negligence.  *See, e.g., Michigan Nat'l Bank v. St. Paul Fire & Marine Ins. Co.*, 566 N.W.2d 7, 9 (Mich. Ct. App. 1997) ("It is not against Michigan public policy for a party to contract against liability for damages caused by its own ordinary negligence.").  Contracting parties are also free to limit remedies by agreement and contract terms limiting damages are valid unless found unconscionable.  *See St. Paul Fire & Marine Ins. Co. v. Guardian Alarm Co.*, 320 N.W.2d 244, 247 (Mich. Ct. App. 1982) ("The contract clause limiting defendant's liability to the aggregate of six monthly payments or $250 is manifestly reasonable under the circumstances of this case."); *Allen v. Mich. Bell Telephone Co.*, 171 N.W.2d 689, 692 (Mich. Ct. App. 1969); *WXON-TV, Inc. v. A.C. Nielson Co.*, 740 F. Supp. 1261, 1264 (applying Michigan law and finding limitation of damages clause in contract valid); *Indiana Ins. Co. v. Erhlich*, 880 F. Supp. 513, 518 (W.D. Mich. 1994) (agreeing with party's assertion that "[m]odifications and limitations of remedies, such as liquidated damages clauses or waivers of some or all causes of action, are common provisions" enforceable under Michigan law).

Plaintiff does not argue that the contracts were unconscionable.  Nor does the court find a factual basis in the record to support both the substantive and procedural

9

prongs required to establish unconscionability as a matter of law.  *See Allen*, 171

N.W.2d at 692.  Unconscionability will be found rarely in a commercial context.  *U.S.*

*Fibres v. Proctor & Schwartz, Inc.*, 509 F.2d 1043, 1048 (6th Cir. 1975).  As the *WXON-*

*TV* court summarized,

> The law presumes that business people are fully competent to enter into
> contracts and obligate themselves to perform in any manner they wish.
> The courts have no authority to rewrite the terms of a contract because
> they might feel that it was an unwise agreement for a party to have
> entered into.  *Michigan Association of Psychotherapy Clinics v. Blue
> Cross,* 101 Mich. App. 559, 573-74, 301 N.W.2d 33 (1980), *set aside in
> part on other grounds,* 411 Mich. 869, 306 N.W.2d 101 (1981), *after
> remand* 118 Mich. App. 505, 325 N.W.2d 471 (1982).

*WXON-TV Inc.*, 740 F. Supp. at 1264.

### C.  Plaintiff's Claims for Damages Within the Interior of the Premises are Barred

The "LIABILITY" provisions in the parties' contracts unambiguously state, among

other things, that Defendant "will not be held responsible for water damage to the

interior of the premises" and that "[c]ustomer is urged to cover furniture and otherwise

protect their property."  (Def.'s Mot. Br. Ex. 3.)  These limitation on damages provisions

also demonstrate that Plaintiff agreed that its claims for water damage within the interior

of the warehouse are barred by the parties' unequivocal objective expression in the

contract documents.

Plaintiff attempts to circumvent this unambiguous language by arguing that

language on the front page of the contracts creates an express warranty that conflicts

with the damage limitation terms located on the reverse side.  Plaintiff argues that

Defendant provided a "10-year workmanship and materials limited warranty" and

specifically agreed that "[t]he Company will exercise reasonable care when performing

10

the work." (*Id.*)  Plaintiff maintains that these more specific contract terms trump the general terms limiting liability for specified types of damages.

Plaintiff correctly identifies the canon of contract construction used by courts in this circuit which acknowledges that specific language prevails over general language in a contract.  *See B.F. Goodrich Co. v. United States Filler Corp.*, 245 F.3d 587, 596 (6th Cir. 2001); *Kmart Corp. v. Fireman's Fund Ins. Co.,* 88 F. Supp. 2d 767, 774 (E.D. Mich. 2000) ("Michigan law requires that where a specific contract clause is at odds with a general contract clause, the more specific clause will control.") (citing *Fresard v. Michigan Millers Mutual Insurance Co.,* 296 N.W.2d 112, 114 (Mich. Ct. App. 1980)).

Applying this rule of construction, however, does not support Plaintiff's argument.  Rather, it supports Defendant's position.  Although labeled "General Terms and Conditions" the language of the "LIABILITY" and "GUARANTEE" terms contain specific language limiting damages and remedies.  The "LIABILITY" term itself states that Defendant "will exercise reasonable care when performing the work," but the contract language expressly and specifically limits the types of damages recoverable.  Even when assuming an express warranty is created, nothing in the contracts conflicts with the limitation of liability and damages found in the specific provisions on the reverse side of the agreements.  The provisions identified by Plaintiff do not create an inconsistency or ambiguity for the trier of fact to resolve.

Next, Plaintiff argues that *Berk v. Gordon Johnson Co.*, 232 F. Supp. 682, 687 (E.D. Mich. 1964) "best illustrates how this issue should be resolved."  (Pl.'s Resp. at 5.) In *Berk*, the court confronted a contract for the sale of automated equipment for the production of kosher poultry.  *Berk*, 232 F. Supp. at 684.  The plaintiffs/buyers of the

11

equipment filed a breach of warranty claim against the defendant/seller.  The plaintiffs
relied on the handwritten words "kosher operation" in a drawing that they claimed was
part of the parties' contract.  The plaintiffs argued that the defendant provided a
warranty that the equipment was fit for a particular purpose, i.e. that is was fit for kosher
operation.  *Id.* at 685, 686.  The defendant moved for summary judgment, but the court
denied the motion, ruling that a triable issue of fact remained.

The court noted, that to prove a breach of express warranty, the plaintiffs had to
establish: (1) that the drawing with the words "kosher operation" was an integral part of
the parties contract; (2) that the words represented an express warranty that the
equipment would in fact be adequate for kosher operations; and (3) that the express
warranty language binds the defendants notwithstanding a general disclaimer of
warranties on the back of the parties' contract document.  *Id.* at 686.  After finding
sufficient evidence to create an issue of fact on the first two elements, the court turned
to the third.

The *Berk* court determined that, in the event the first two elements are proved,
the boilerplate disclaimer of warranties language would conflict with an express
warranty that the equipment was fit for a particular purpose.  The court found that "a
basic ambiguity arises in the contract as a result of the inconsistency of the language of
the disclaimer and the drawing."  *Id.* at 687.  After noting that the conflicting terms must
be construed to effectuate the intent of the parties as gathered from the contract as a
whole, the court applied the rule that "if two clauses are so repugnant that they cannot
stand, the first will ordinarily prevail over the second."  *Id.* (citing *Klever v. Klever*, 52
N.W.2d 653 (Mich. 1952)).  The court also applied the rules of construction that

12

handwritten terms should prevail over printed language and that specific provisions trump general ones. *Id.* at 687-88.

In this case, there exist no handwritten contractual provisions and, as noted above, the more specific provision is the "LIABILITY" provision which unambiguously limits the type of damages recoverable by Plaintiff. In addition, the "LIABILITY" term on the reverse side and the language cited by Plaintiff as creating an express warranty are not "so repugnant that they [both] cannot stand." *See id.* at 687. Even if a warranty applies, there is nothing in the language that would invalidate the limitation of liability and damages expressly agreed upon.

Plaintiff also argues that the language on the reverse side of the parties' agreements cannot constitute a valid release of liability under Michigan law. Plaintiff claims that "because Defendant did not contract against his own negligence and there was no conspicuous language to direct the reader to the language of the 'release,' and because [ ] signing . . . to accept the 'above prices, specifications, and conditions' does not include agreement to accept the conditions on the reverse side of the contract." (Pl.'s Resp. at 7.) This latter argument is nothing more than an attempt to avoid the consequences of Tronstein's failure to read the entire contractual language and remains unpersuasive.

Under Michigan law, a release of liability is valid if it is fairly and knowingly made. *Xu v. Gay*, 668 N.W.2d 166, 171 (Mich. Ct. App. 2003). "The scope of a release is governed by the intent of the parties as it is expressed in the release." *Id.* "If the text in the release is unambiguous, [the court] must ascertain the parties' intentions from the plain, ordinary meaning of the language of the release." *Wyrembelski v. St. Clair*

13

*Shores*, 553 N.W.2d 651 (Mich. Ct. App. 1996).  "The fact that the parties dispute the meaning of a release does not, in itself, establish an ambiguity."  *Id.*

"A release is knowingly made even if it is not labeled a 'release,' or the releasor fails to read its terms, or thought the terms were different, absent fraud or intentional misrepresentation designed to induce the releasor to sign the release through a strategy of trickery."  *Xu*, 668 N.W.2d at 171-72 (citing *Dombrowski*, 502 N.W.2d at 707)).

When applying the law of "releases" to the instant case, there is no evidence that Plaintiff did not knowingly and fairly execute the contract containing the language amounting to a release.  *See id.*  That an agent of Plaintiff's subrogee failed to read the entire contract is not relevant.  In addition, the unambiguous language disclaims certain specific damages related to Defendant's own negligence.  "In order for a party to disclaim liability for its own negligence, the contract must contain a clear and unequivocal expression of such an intent."  *American Empire Ins. Co. v. Koenig Fuel & Supply Co.*, 317 N.W.2d 335, 337 (Mich. Ct. App. 1982).

The court in *Indiana Insurance Company v. Erhlich* considered, and rejected, an argument similar to Plaintiff's argument that a party failed to contract against its own negligence, thereby rendering the release invalid.  As explained by the *Erhlich* court,

> Indiana also argues that the clauses are not sufficiently clear to be enforceable.  Under Michigan law, "[i]n order for a party to disclaim liability for its own negligence, the contract must contain a clear and unequivocal expression of such an intent."  *American Empire Ins. Co. v. Koenig Fuel & Supply Co.*, 113 Mich. App. 496, 317 N.W.2d 335, 337 (1982).  The waiver clauses at issue could not be more clear.  However, Indiana argues that because the waivers do not specifically provide that the defendants are not liable for their own negligence, and because the contracts place certain duties of care on the defendants, at a minimum a genuine issue of material fact remains concerning whether the parties truly intended such a

14

> waiver.  The court finds this argument to be without merit.  A contract provision purporting to relieve a party from liability for negligence need not contain the word "negligence" in order to be enforceable.  *See Paterek,* 465 N.W.2d at 344.

*Erhlich*, 880 F. Supp. at 518.  Here, the language of the limitation on damages provisions contains a clear expression that Defendant would not be responsible for specified types of damages, including "water damage to the interior of the premises." (Def.'s Mot. Br., Ex. 3.)

Plaintiff's argument that the language was not conspicuous is likewise unavailing. Plaintiff relies on *Krupp PM Engineering, Inc. v. Honeywell, Inc.*, 520 N.W.2d 146 (Mich. Ct. App. 1995) to support this argument.  In *Krupp*, however, the court examined the statutory requirements, under Michigan's Uniform Commercial Code, required to validly disclaim an implied warranty of merchantability.  *Krupp*, 530 N.W.2d at 148; Mich. Comp. Laws §§ 440.2314 & 440.2316(2).  Conversely, this case involves a contract for the performance of roofing repair services and there is no evidence suggesting that the predominant purpose of the contracts at issue was for goods under the Uniform Commercial Code.  *See Frommert v. Bobson Construction Co.*, 558 N.W.2d 239, 240 (Mich. Ct. App. 1997).  There is no requirement that the contract language in this case be "conspicuous," and the court is satisfied that the provision contains a clear and unequivocal expression of an intent to disclaim recovery for Defendant's negligence. *See American Empire Ins. Co.*, 317 N.W.2d at 337.

## D.  Implied Warranties

Plaintiff also maintains that Defendant was under an implied duty to perform in a skillful and workmanlike manner.  Defendant argues that when a service provider fails to perform under a contract, an injured party has an action for breach of contract rather than for breach of an implied warranty.  Plaintiff correctly notes that a party contracting to provide services has an implied "duty to perform [the contract] skillfully, carefully, diligently, and in a workmanlike manner."  *Nash v. Sears, Roebuck & Co.*, 174 N.W.2d 818 (Mich. 1970).  Michigan courts have recognized that "negligent performance under a contract constitutes a tort as well as a breach of contract."  *Co-Jo Inc. v. Strand*, 572 N.W.2d 251, 254 (Mich. Ct. App. 1998).

The court in *Co-Jo Inc.*, a case cited by Plaintiff, explains, however, that there is no separate cause of action for breach of implied warranty.  In *Co-Jo Inc.*, the plaintiffs brought a claim for breach of implied or express warranty, alleging that the defendant's negligent performance of plumbing services constituted a breach of an express or implied warranty to perform the services free from defects.  As the *Co-Jo Inc.* court explained:

> In *Nash,* the Court noted that in every contract there is an implied "duty to perform it skillfully, carefully, diligently, and in a workmanlike manner."  *Id.* at 142, 174 N.W.2d 818.  Where a party to a contract fails to comply with the implied duty to perform in a workmanlike manner, the other party may be entitled to damages resulting from the deficient performance. *Id.* at 143, 174 N.W.2d 818.  This duty has been further explained as requiring the contracting party to perform with reasonable care, thus providing the basis for a negligence claim when a contracting party fails to live up to that duty.  *Williams v. Polgar,* 391 Mich. 6, 18-19, 215 N.W.2d 149 (1974).  Accordingly, the Supreme Court has recognized that "the contract merely creates the state of things which furnishes the occasion of the tort." *Id.* at 19, 215 N.W.2d 149.  Hence, the Court has indicated that negligent performance under a contract constitutes a tort as well as a breach of

16

contract. *Id.* at 19, 215 N.W.2d 149. *Plaintiff has not cited any authority,
however, in support of a finding that negligent performance under a
contract would also constitute a breach of an implied or express warranty,
and our research has unveiled none.*

*Co-Jo Inc.*, 572 N.W.2d at 253-54 (emphasis added).

### E.  Plaintiff's Claims for Damages to the Roof Itself

Independent of its claims seeking to recover for water damage caused inside the

warehouse, Plaintiff also seeks to recover under its breach of contract and negligence

theories for damages resulting to the roof of the warehouse itself.  Plaintiff alleges that

"Defendant negligently broomed and trafficked over the original tar pitch roof

membrane, irreparably damaging the membrane," "negligently install[ed] the new atactic

polypropylene (APP) roof by inadequately securing the insulation, base sheet and APP

membrane," "inadequately torch[ed] the APP field shields and seams," and "improperly

appl[ied] the flashing materials."  (Pl.'s Resp. at 10.)  Plaintiff also avers that Roofmaster

left several holes in the new membrane unrepaired, allowing water to travel beneath the

new roof system.  (*Id.*)

The court agrees that the plain meaning of the "LIABILITY" provisions in the

contracts do not insulate Defendant from damages caused to the roof itself.  The

contract provisions state that Roofmaster "cannot be held responsible in any other

manner for damages to sidewalks and driveways, foliage, septic tanks, shrubbery,

screens, pipes or cable above or below ground."  (Def.'s Mot. Br. Ex. 3.)  The provisions

go on to exclude responsibility for "water damage to the interior of the premises" and

"for any damages done to the roof by plumbers, electricians, air conditioner men,

fumigators, or any other tradesmen."  (*Id.*)  Noticeably absent is any mention of

17

responsibility for damages to the roof itself.  The contract language specifically excludes "damages done to the roof" by others, but makes no mention of damages to the roof caused by Defendant or its agents.

The general principle of contract interpretation, *expressio unius est exclusio alterius*, holds that a specific mention of one thing implies an intent to exclude another. By excluding responsibility for damages to the roof cause *by others*, the parties' contract provisions suggest an intent not to limit *Roofmaster's* responsibility for such damages. *See Clark Bros. Sales Co. v. Dana Corp.*, 77 F. Supp. 2d 837, 844 (E.D. Mich. 1999); *Zynda v. Michigan Aeronautics Comm'n,* 25 N.W.2d 858, 859 (Mich. 1964); *Grinnell Bros. v. Brown,* 171 N.W. 399, 400 (Mich. 1919) ("The expression of one thing is the exclusion of another, and a thing expressed puts an end to tacit implication.").

Defendant argues that Plaintiff cannot recover for any damages caused by Defendant to the roof because Gardner-White refused its *sole* contractual remedy of repair by Roofmaster.  Defendant rests its claim on the contract language that provides:

> We reserve the right to correct any and all problems from or arising out of the performance of this contract where we are found responsible and do not authorize personnel other than that of the Company to perform these services.

(Def.'s Mot. Br., Ex. 3.)

This contract language is unambiguous.  Defendant Roofmaster reserved the right to correct "any and all problems from or arising out [its] performance." During the April 27, 2005 hearing, counsel for Plaintiff acknowledged that it was undisputed that Defendant continued to work on the roof following the damage to inventory inside the warehouse and that Plaintiff replaced Defendant with another

18

contractor.  Plaintiff presents no admissible evidence to the court that controverts Defendant's contention that it was denied any opportunity to fix or repair the alleged damage to the roof itself or that it waived its right to do so under the contract terms.

During oral argument, Plaintiff argued that its negligence claim is not barred by the above-cited contract language giving Roofmaster the exclusive right to repair.  Plaintiff's attempt to limit the contract language only to bar a breach of contract claim is unavailing.  The contract language applies to "any and all problems arising out of the performance" of the contract.  (*Id.*)  There is simply no dispute that Plaintiff's allegations of negligence in causing damages to the roof itself arise out of the performance of the contract.  The court will grant Defendant's motion for summary judgment.

## IV.  CONCLUSION

IT IS ORDERED that Defendant's "Motion for Summary Judgment" [Dkt. # 13] is GRANTED.


s/Robert H. Cleland

ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE


Dated:  April 28, 2005

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 28, 2005, by electronic and/or ordinary mail.

 s/Lisa G. Teets
____
Case Manager and Deputy Clerk
(313) 234-5522